[Civ. No. 18154.   First Dist., Div. Two.   June 26, 1958.]

DAVID MICHAEL GROVER, a Minor, etc., Petitioner, v. SUPERIOR COURT OF SAN MATEO COUNTY, Respondent; PADDOCK ENGINEERING COMPANY (a Corporation), Real Party in Interest.

Miller, Francis, Miller & Osborne and O. Leland Osborne for Petitioner.

No appearance for Respondent.

Sullivan & West and Ralph Sullivan for Real Party in Interest.

DRAPER, J.—This mandamus proceeding concerns application of discovery procedures authorized by 1957 amendments to the Code of Civil Procedure (Stats. 1957, chap. 1904, pp. 3321-3336).

Petitioner, as plaintiff, filed a personal injury action April 1, 1957 against Paddock Engineering Company, the real party in interest in the present proceeding. Counsel for plaintiff and defendant stipulated that Dr. O'Connor, acting for defendant, could conduct a physical examination of plaintiff. The examination was had December 5, 1957. At some unspecified date thereafter, Dr. O'Connor prepared and delivered to defendant's counsel his written report of that examination. At pretrial conference January 7, 1958, plaintiff orally and in writing requested a copy of the report. His request was refused. His noticed motion to require such delivery was heard and denied January 24, 1958. Plaintiff then served upon Dr. O'Connor a subpoena to take deposition. Before the date noticed for the deposition, defendant sought, and after hearing obtained, an order of respondent court that the deposition not be taken. (Code Civ. Proc., § 2019, subd. (b).) At the same time, the court denied plaintiff's noticed motion to inspect and take a copy of Dr. O'Connor's report. (Code Civ. Proc., § 2031, subd. (a).) Plaintiff now seeks writ of mandamus requiring respondent court to order delivery of a

copy of the report or, in the alternative, to permit taking of the deposition of Dr. O'Connor.

Defendant contends, first, that Dr. O'Connor's report is within the attorney-client privilege, and thus cannot be reached either by inspection of his report or by taking his deposition; and, second, that the discovery procedures do not, in any event, apply here because the physical examination was had before January 1, 1958, the effective date of the discovery amendments (Stats. 1957, p. 3336).

''There are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate; therefore, a person cannot be examined as a witness in the following cases: . . . 2. Attorney and client. An attorney cannot, without the consent of his client, be examined as to any communication made by the client to him. . . .'' (Code Civ. Proc., § 1881.) ▮ The purpose of the privilege is to encourage a client to make a full disclosure to his attorney without fear that others may be informed. (*Holm* v. *Superior Court*, 42 Cal.2d 500, 506-507 [267 P.2d 1025, 268 P.2d 722].) ▮ Since the privilege serves to suppress relevant facts, it is to be strictly construed. (*City & County of San Francisco* v. *Superior Court*, 37 Cal.2d 227, 234 [231 P.2d 26, 25 A.L.R. 2d 1418].)

▮ It is communication between the client and his own attorney which is privileged. Here the communication by the plaintiff was to a physician engaged by opposing counsel. In such case, the necessary element of attorney-client relationship, as well as the essential feature of confidential intent in revealing information, is lacking. The fact that a plaintiff's submission to examination by a doctor employed by defense counsel is adversary, rather than confidential, is emphasized by the right of plaintiff's counsel to insist upon being present at such examination. (*Sharff* v. *Superior Court*, 44 Cal.2d 508 [282 P.2d 896].)

The case at bar is readily distinguished from *City & County of San Francisco* v. *Superior Court*, *supra*, 37 Cal.2d 227. There plaintiff was examined by a physician engaged by plaintiff's own attorney to enable the attorney to be informed of his client's condition. As pointed out by the court, communication by the client to his counsel required ''the assistance of a physician to interpret the client's condition'' to his attorney (p. 237). The client's submission to examination by the intermediary acting for his attorney clearly was confidential. Thus the physician's transmission of plaintiff's communication

was privileged quite as much as would be that of an interpreter translating the client's statements to an attorney who does not speak the client's language. But it is the fact of communication from client to attorney, rather than the mere use of an interpreter as intermediary, which brings the privilege into existence. Here the client's communication is not to his own attorney, but to opposing counsel.

It is doubtful that transmission of the results of this unprivileged examination by the doctor to defense counsel clothes the report with the attorney-client privilege. There is no showing that Dr. O'Connor is an employee of defendant, and the memoranda of the parties appear to concede that he is conducting an independent practice. Thus there is grave doubt that his report can be classed as a communication ''between corporate employees'' for transmission to the corporation's attorney, so as to bring it within the rule of *Holm* v. *Superior Court, supra,* 42 Cal.2d 500, 508. Since the communication by plaintiff was not to his attorney, and the communication to defendant's attorney probably was not by his client, it would be difficult to hold that the medical report is within the attorney-client privilege defined by our statute. But we do not find it necessary to pass upon this question, as we have concluded that, even if the privilege exists, it was waived.

Defendant relies heavily upon the provision of the amendatory statute that:

''This article shall not be construed to change the law of this State with respect to the existence of any privilege, whether provided for by statute or judicial decision, nor shall it be construed to incorporate by reference any judicial decisions on privilege of any other jurisdiction.'' (Code Civ. Proc., § 2016, subd. (b).)

Section 2032, subdivision (b)(1), provides expressly that upon request of the person examined the opposing party shall deliver to him a copy of the examining physician's report. Assuming that the report is privileged, it is contended that the two sections are in conflict. Of course, to treat section 2032, subdivision (b)(1) as eliminating a privilege heretofore existing would be to create direct conflict between this section and the above-quoted language of section 2016, subdivision (b), thus necessitating holding one or the other of these simultaneously adopted provisions to be inoperative. But a statute should be so construed as to give effect to each and every part thereof. (23 Cal.Jur. 758.) To construe section 2032, sub-

division (b)(1) as providing that any privilege against disclosure of the medical report is waived by procuring the physical examination upon which that report is based is in accord with this basic principle. Thus construed, section 2032, subdivision (b)(1), does not "change the law of this State with respect to the *existence* of any privilege," but provides only that, if there be a privilege whose continuing existence is recognized, nonetheless the privilege is waived. We adopt this construction.

■ Defendant argues, however, that this section cannot apply to the report of a medical examination conducted December 5, 1957, because the amendatory act provides that it "shall not become operative until January 1, 1958, and shall govern proceedings in actions brought on or after said date and also further proceedings in actions pending on said date." We see no reason to curtail the operation of the statute as defendant suggests. The Legislature obviously considered the discovery procedures desirable and beneficial. Their action merits liberal construction of the act by the courts. The legislative determination was not hurried or precipitate. The federal courts and a number of states have had comparable discovery procedures for many years. Our statute was proposed by the State Bar of California, and this fact and the legislative consideration of the proposal were widely publicized among lawyers. The statute was approved by the governor July 6, 1957, and was included in the printed statutes and code amendments delivered to the bar long before December 5, 1957, the date of the examination here in question. Counsel in this case must be deemed to have had full knowledge of the statute when they stipulated to the physical examination of plaintiff, and to have entered that stipulation with complete cognizance that further proceedings in the present action, taken on or after January 1, 1958, would be governed by it. Defendant argues that such a holding would give retrospective effect to the statute. But this statute is procedural only. (*Kerchoff-Cuzner Mill & Lbr. Co.* v. *Olmstead,* 85 Cal. 80 [24 P. 648]; *Steinbauer* v. *Bondesen,* 125 Cal. App. 419 [14 P.2d 106]; *Sibbach* v. *Wilson & Co.,* 312 U.S. 1 [61 S.Ct. 422, 85 L.Ed. 479].) It affects no vested substantive right in its operation, after its effective date, upon procedures to be followed in actions theretofore filed. The act does govern the proceedings here in issue.

■ Defendant argues that plaintiff is not entitled to a copy

of the report because the examination of plaintiff was made pursuant to stipulation, rather than order. Section 2032, subdivision (a), authorizes a court to order physical examination at the instance of the opposing party. Section 2032, subdivision (b)(1), provides that the examining party shall, upon request, deliver a copy of the physician's report to "the party against whom an order is made . . . or the person examined." The comparable federal rule (35(b)) does not contain this alternative, but provides only for supplying a copy to "the person examined." It can be argued that the alternative stated in our statute specifically requires delivery to the party examined even if no order had been made for his examination. But, even under the federal rule, the decisions are uniform that one who submits voluntarily to examination by his adversary's physician, without requiring a formal order therefor, is entitled to a copy of the examining physician's report. (*Kelleher* v. *Cohoes Trucking Co.*, 25 F.Supp. 965; *Keil* v. *Himes*, 13 F.R.D. 451; *Dumas* v. *Pennsylvania R. Co.*, 11 F.R.D. 496; *Lipshitz* v. *Bleyhl*, 5 F.R.D. 225.) A contrary ruling would but consume the time of trial court and counsel by encouraging formal motions to be made and determined in situations where there is no real objection by plaintiffs to physical examination.

Under subdivisions (b) and (d) of section 2019, the trial court is given a broad discretion to prohibit the taking of a deposition or to limit its scope. Plaintiff offers no evidence to show abuse of this discretion in the order that the deposition not be taken, but in fact concedes that his legitimate request will be fully satisfied by an order for inspection of the medical examiner's report. Accordingly, we do not disturb the order that the deposition not be taken.

Let a peremptory writ of mandate issue requiring respondent court to set aside its order denying petitioner an inspection of the medical examiner's report in question, and to issue an appropriate order for delivery to petitioner of a true copy thereof.

Kaufman, P. J., and Dooling, J., concurred.